The Honorable David G. Estudillo

Leticia Saucedo (pro hac vice)
Luis Lozada (pro hac vice)
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
Email:  lsaucedo@maldef.org
        llozada@maldef.org

Roger M. Townsend (WSBA No. 25525)
BRESKIN, JOHNSON, TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Telephone: (206) 652-8660
Facsimile: (206) 652-8290
Email:  rtownsend@bjtlegal.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELIAS PEÑA, ISAIAH HUTSON, and RAY ALANIS, <br><br> Plaintiffs, <br><br> vs. <br><br> CLARK COUNTY, WASHINGTON, <br><br> Defendant. | Case No.: 3:21-CV-05411-DGE <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DR. LAURA BROWN** <br><br> **[FED. R. EVID. 702/DAUBERT]** <br><br> Noted for Hearing: March 10, 2023 |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DR. LAURA BROWN, CASE NO. 3:21-CV-05411-DGE

1

**INTRODUCTION**

Plaintiffs Elias Pena, Isaiah Hutson, and Ray Alanis ("Plaintiffs") respectfully request that the Court deny "Defendant's *Daubert* Motion to Exclude Dr. Laura Brown's Testimony Regarding Institutional Betrayal Trauma, Betrayal Trauma, and Microaggressions Theories" (the "Motion") filed by Defendant Clark County ("Defendant"). Dkt. No. 44. The Federal Rules of Evidence evince a preference for admitting relevant evidence, and Dr. Brown's testimony regarding Plaintiffs' experiences and injuries resulting from institutional betrayal trauma, betrayal trauma, and microaggressions are relevant in evaluating Plaintiffs' harms in connection with their claims against Defendant Clark County.

Defendant argues that Dr. Brown's testimony does not meet the criteria for expert testimony under *Daubert*. The argument is misplaced. First, Defendant misconstrues the *Daubert* standard for the admissibility of expert testimony. Under the established principles of *Daubert*, Dr. Brown's expert testimony is permissible and appropriate in this case. Second, Defendant misconstrues the purpose and impact of Dr. Brown's expert testimony. Dr. Brown has been retained to testify about Plaintiffs' emotional distress suffered as a result of their discriminatory workplace. Plaintiffs do not claim that they have suffered psychiatric disorders as a result of their ongoing discrimination, but rather that they suffered psychological injury. Dr. Brown should be properly admitted as an expert to assist the jury in determining whether these claims are supported. Finally, Defendant improperly attributes certain opinions to Dr. Brown that are not based on the record.

Dr. Brown meets the *Daubert* standard for providing expert testimony to assist the trier of fact in determining the injury suffered by Plaintiffs because of Defendant Clark County's discriminatory conduct. Additionally, Defendant's objections to Dr. Brown's expert testimony goes to the weight, not the admissibility, of the evidence and is best reserved for cross-examination. Therefore, Defendant's motion to exclude or limit portions of Dr. Brown's testimony is based on a misreading of applicable law, and this Court should therefore deny their Motion.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DR. LAURA BROWN, CASE NO. 3:21-CV-05411-DGE

2

## Statement of Facts

Dr. Laura Brown is an expert on forensic psychology, and on trauma, its diagnosis, and treatments. She is a member of three scientific societies for the study of trauma: the International Society for Traumatic Stress Studies, from which she was awarded the Sarah Haley Award for Clinical Excellence; the International Society for the Study of Trauma and Dissociation, from which she was awarded the status of Fellow; and the Division of Trauma Psychology of the American Psychological Association, of which she is a past-President, and from which she was awarded the Lifetime Achievement Award for Contributions to Trauma Psychology. She has been on the editorial boards of the peer-reviewed journals published by each of these societies, and has read the peer-reviewed literature on trauma since 1985. *Saucedo Decl.*, Exh. A, Dr. Laura Brown declaration, ¶ 2. Additionally, she is a Fellow of the Society for the Psychological Study of Culture, Ethnicity and Race, Division of the American Psychological Association. She was a member of its Executive Committee. *Saucedo Decl.*, Exh. A, Dr. Laura Brown declaration, ¶ 3.

Dr. Brown has taught doctoral and post-doctoral courses on culturally competent assessment of trauma in the United States, Canada, Australia, Israel, Taiwan, and The Netherlands. *Saucedo Decl.*, Exh. A, Dr. Laura Brown declaration, ¶ 4. She is also expert in forensic psychological assessment, having taken and taught a series of courses on the subject. As part of her doctoral training in clinical psychology, she took six semester-long courses in psychological assessment. She took additional post-doctoral coursework on topics of psychological assessment, including psychological assessment of trauma, assessment of effects of discrimination and harassment, and assessment in the forensic context. She has taught psychological assessment to students at the doctoral level, including coursework on forensic assessment of trauma. *Saucedo Decl.*, Exh. A, Dr. Laura Brown declaration, ¶ 5. She has also taught the topic of culturally competent practice at the doctoral level. *Saucedo Decl.*, Exh. A, Dr. Laura Brown declaration, ¶ 5.

Dr. Brown has published 12 books and edited three other books, in addition to over 160 scholarly articles and chapters in her fifty-year career. Topics of her books and articles include trauma, institutional trauma, trauma therapy, cultural competence in trauma therapy, forensic psychology, among other topics. *Saucedo Decl.*, Exh. B, Laura Brown Curriculum Vitae.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DR. LAURA BROWN, CASE NO. 3:21-CV-05411-DGE

3

**Legal Standard**

Federal Rule of Evidence 702 provides for the admission of expert testimony. *See* Fed. R. Evid. 702. Rule 702 establishes several requirements for admissibility: (1) the evidence must "assist the trier of fact" either "to understand the evidence" or "determine a fact in issue" and (2) the witness must be sufficiently qualified to render the opinion:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702(a)–(d). *Daubert* replaced the "general acceptance in the particular field" test articulated in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993) ("Nothing in the text of [Rule 702] establishes 'general acceptance' as an absolute prerequisite to admissibility." "That austere [*Frye*] standard, absent from, and incompatible with, the Federal Rules of Evidence, should not be applied in federal courts." *Id.* at 589. The Rule 702 requirement that expert testimony "assist the trier of fact" "goes primarily to relevance." *Id.* at 591.

The trial court is charged with a "gatekeeping function" to ensure expert testimony is both reliable and relevant. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *see also U.S. v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (The trial judge is "a gatekeeper, not a fact finder."). Reliability is analyzed under Rule 702, which requires that the expert witness be qualified "by knowledge, skill, experience, training, or education," that the testimony is based upon sufficient facts or data and the product of reliable principles and methods, and that the witness has applied the principles and methods reliably to the facts of the case. *Kumho Tire Co.*, 526 U.S. at 147–48; *Daubert*, 509 U.S. at 587–595. Experts are permitted to render opinions even if based on inadmissible evidence, so long as the inadmissible evidence is of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703; *Daubert*, 509 U.S. at 595.

"[F]ar from requiring trial judges to mechanically apply the *Daubert* factors—or something like them—to both scientific and non-scientific testimony, *Kumho Tire* heavily

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DR. LAURA BROWN, CASE NO. 3:21-CV-05411-DGE

4

emphasizes that judges are entitled to broad discretion when discharging their gatekeeping function." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (citing *Kumho Tire Co.*, 526 U.S. at 151–52). A district court not only retains "broad discretion to decide whether to admit expert testimony" but also has "the same kind of latitude in deciding *how* to test an expert's reliability." *Id.* (quoting *Kumho Tire Co.*, 526 U.S. at 152) (emphasis in original).

Where the adequacy of the foundation of an expert's testimony is at issue, the law favors admission and cross-examination over exclusion. *See Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1017 n. 14 (9th Cir. 2004) (quoting *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004) ("[T]he factual basis of an expert opinion to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."); *see also Shimozono v. May Dept. Stores Co.*, No. 00-0461, 2002 WL 34373490, at *3 (C.D. Cal. Nov. 20, 2002) ("To the extent that Dr. Levy offers a conclusion that lacks an adequate foundation, Robinsons-May can attack the credibility of Dr. Levy's conclusion through cross-examination, presentation of contrary evidence, and requests for limiting instructions.").

**ARGUMENT**

Federal Rule of Evidence 702 governs the admissibility of expert testimony, which establishes a gatekeeping function for the court to ensure that the proffered testimony is both reliable and relevant. Based on the cited authorities above, Dr. Brown's testimony regarding the psychological harm suffered by Plaintiffs' discriminatory treatment is reliable and relevant.

**A. Dr. Brown's Testimony is Admissible Because it is Reliable**

Defendant seeks to exclude or limit portions of Dr. Brown's testimony because, they argue, institutional betrayal trauma, betrayal trauma and microaggressions are not recognized or not supported under the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5). Motion at 2–7. Defendant's complaints go to the weight of Dr. Brown's expert testimony, rather than its admissibility, and therefore more appropriately left for cross-examination.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DR. LAURA BROWN, CASE NO. 3:21-CV-05411-DGE

5

As articulated in *Daubert*, Rule 702 requires the court to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also Elosu v. Middlefork Ranch*, 26 F.4th 1017, 1023 (9th Cir. 2022); *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (expert testimony is reliable if "the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."). To evaluate reliability, the district court "must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance." *Elosu*, 26 F.4th at 1024 (quoting *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014)). The trial judge must be circumspect; the test under *Daubert* "is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharm. Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995).

The trial judge is "a gatekeeper, not a fact finder." *Sandoval-Mendoza*, 472 F.3d at 654. Even "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010. The court's gatekeeping function does not include determining whether an expert "is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969–70. "If the proposed testimony meets the thresholds of relevance and reliability, its proponent is 'entitled to have the jury decide upon [its] credibility, rather than the judge.'" *Elosu,* 26 F.4th at 1024 (quoting *Sandoval-Mendoza*, 472 F.3d at 656).

Here, Defendant Clark County wrongly concludes that this case is about determining an accurate diagnosis under the DSM-5 Handbook. Plaintiffs aver that they have suffered serious injury because of Defendant's discrimination, not that they have experienced a specific diagnosis under the DSM-5. All the argumentation regarding Dr. Brown's conclusions under the DSM-5 misses the point, just as it would be beside the point if Plaintiffs had suffered a broken leg because of the discriminatory treatment. The pertinent question is whether Dr. Brown can assist the jury in determining the existence and extent of psychological and emotional harm suffered from the hands of Defendant's discriminatory treatment.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO
EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS'
EXPERT, DR. LAURA BROWN, CASE NO. 3:21-CV-05411-DGE

6

### 1. *The Reliability of Dr. Brown's Expert Testimony*

The foundation for reliability may be grounded in an expert's experiences and qualifications. Dr. Brown's experience, knowledge, qualifications, and decades of training qualify her to opine on the effects of trauma, discrimination, and harassment on Plaintiffs' emotional and mental well-being. As reflected on her curriculum vitae, Dr. Brown has published several books and hundreds of articles in her field of expertise during her fifty-year career. Dr. Brown has received numerous honors and accolades for her work, including but not limited to the American Psychological Association Division of Trauma Psychology (past president), Association for Psychological Science, International Society for the Study of Trauma and Dissociation, contributions to the American Psychological Association Committees, and many awards. She has read the peer-reviewed literature on trauma since 1985. She has taught doctoral and post-doctoral courses on culturally competent assessment of trauma victims in the United States and internationally. She took many pre-doctoral courses in psychological assessment as well as attended many post-doctoral continuing education courses on psychological assessment, and she has also taught psychological assessment at the doctoral level, including coursework on forensic assessment of trauma. Dr. Brown reached her conclusions by using the usual and customary methodology for conducting a forensic evaluation. *Saucedo Decl.*, Exh. A, Declaration of Dr. Laura Brown, ¶ 6. Her methodology includes conducting assessments with both general and trauma-specific objective psychological instruments that contain embedded measures of validity; review of medical and mental health records from the Plaintiffs' medical providers; in-person interviews with Plaintiffs that covered lifetime history of exposure to risk factors and lifetime expression of resilience (including medical history, psychological history, and social history). *Saucedo Decl.*, Exh. A, Declaration of Dr. Laura Brown, ¶ 7. Dr. Brown conducted two assessments with formal psychological test instruments, with the Plaintiffs, as is warranted in her field of forensic psychology: the Personality Assessment Inventory (PAI) and the Trauma Symptom Inventory-2 (TSI-2). *Saucedo Decl.*, Exh. A, Declaration of Dr. Laura Brown, ¶ 8. She also developed and tested hypotheses to arrive at an opinion regarding the psychological distress of the Plaintiffs. She then engaged in a process of differential diagnosis in each case, an analytic

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DR. LAURA BROWN, CASE NO. 3:21-CV-05411-DGE

7

process in which a trained diagnostician analyzes all available data to arrive at the most likely diagnosis and to rule out other diagnoses. *Saucedo Decl.*, Exhibit A, Declaration of Dr. Laura Brown, ¶ 9.

Defendant asserts (incorrectly) that Dr. Brown relied solely on Plaintiffs' testimony to form her opinions; however, it does not expressly question her credentials, qualifications, or methodology. Instead, it argues, without providing further explanation, that its own retained expert would have taken a different approach. Questions about credentials and credibility are matters that are best handled by cross-examination or impeachment testimony at trial. *See Avis*, 738 F.3d at 970 ("An expert's credentials and qualifications "all go to the weight of the testimony and its credibility, not its admissibility."); *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) ("Disputes as to the strength of [an expert's] credentials […] go to the weight, not the admissibility of [her] testimony.").

Courts have "broad discretion," both in deciding whether the evidence is reliable and in deciding how to test for reliability. *Hankey*, 203 F.3d at 1168. In *Daubert*, the Supreme Court listed various factors that might apply, including whether the expert's technique or theory (1) can be tested; (2) has been peer reviewed or published; (3) has a known or potential basis for error; and (4) is generally accepted in the pertinent scientific community. *Daubert*, 509 U.S. at 593–94. However, "[t]he *Daubert* factors were not intended to be exhaustive nor to apply in every case." *Hankey*, 203 F.3d at 1168.

In addition to scientific studies, indicia of reliability include professional experience, education, training, and observations. "The *Daubert* factors […] simply are not applicable to [testimony] whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Id.* at 1169; *see also White v. Ford Motor Co.*, 312 F.3d 998, 1007 (9th Cir. 2002) ("[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.") (internal quotation marks omitted).

Defendant's argument that Dr. Brown's conclusions are not supported by the record are both misguided legally and unsupported factually. Defendant argues that because Dr. Brown "relied on

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DR. LAURA BROWN**, CASE NO. 3:21-CV-05411-DGE

8

a predicate factual assumption relating to Plaintiffs' liability claims," her conclusions are somehow suspect and unreliable. This is not the standard to apply in determining admissibility of expert testimony. The correct standard is whether Dr. Brown acted in accordance with professional standards for the forensic analysis she conducted. Ultimately, "[t]he court's role is to determine 'the scientific validity' of an expert's 'principles and methodology,' not to determine whether their hypothesis is correct, or to evaluate whether it is corroborated by other evidence on the record. That is for the litigants to argue, and for the jury to decide." *Elosu*, 26 F.4th at 1026 (quoting *Daubert*, 509 U.S. at 594–95).

In addition to mischaracterizing the standard for expert testimony, Defendant misstates the relevant facts. Dr. Brown conducted her psychological analysis of Plaintiffs' mental and emotional distress by interviewing each Plaintiff, by reviewing their medical records, their past psychiatric history, their social history and relationships, and by conducting forensic tests generally accepted in the field of psychology. *Saucedo Decl.*, Exh. A, Declaration of Dr. Laura Brown, ¶ 7. It is important to note that Defendant's expert testified that he would have followed the same or similar procedure to evaluate Plaintiffs' level of distress. *See e.g., Saucedo Decl.*, Exh. D, Vandenbelt Hutson Preliminary Expert Report at 1.

Finally, Defendant mischaracterizes Dr. Brown's testimony regarding her use of information such as the DSM-5, along with other scientific treatises and texts, to arrive at her conclusions. Dr. Brown testified that she utilizes DSM diagnoses in forensic contexts because the text offers a commonly used taxonomy of distress that allows her to educate triers of fact as the nature of distress experienced by the individuals she evaluates. *Saucedo Decl.*, Exhibit C, Dr. Laura Brown deposition, 29:5-8. She also testified that her diagnoses of institutional betrayal trauma, betrayal trauma and microaggressions are forms of trauma that can be listed within the Other Specified Trauma and Stressor Related Disorder (OSTSRD) section of Trauma Disorders in the DSM-5. Exhibit C, Dr. Laura Brown deposition, 30:8-24. The OSTSRD does not have a fixed set of criteria, which allows for a more holistic and inclusive description of a person's distress, in contrast to giving a list of other possible diagnoses with overlapping symptoms. *Saucedo Decl.*, Exh. A, Dr. Laura Brown declaration, ¶ 10. Dr. Brown gave the *specific reasons*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DR. LAURA BROWN, CASE NO. 3:21-CV-05411-DGE

9

for her diagnosis of these three formulations of trauma, Institutional Betrayal Trauma, Betrayal Trauma, and Microaggression, all constructs of types of trauma that do not fall within the parameters of DSM's Criterion A, yet all of which are derived from peer-reviewed literature in scientific psychology and recognized in that peer-reviewed literature as forms of trauma. *Saucedo Decl.*, Exhibit A, Declaration of Dr. Laura Brown, ¶ 10.

Defendant counsel's argument that because these constructs are not listed in the DSM that they should be not allowed into Dr. Brown's testimony is specious, because it ignores the specific wording of the diagnosis, and the intent of its inclusion in DSM-5, which was to allow a clinician who is familiar with the science of psychology to offer a diagnosis in which an experience that is well-documented in the scientific literature as potentially traumatic can be specified.

Defendant's counsel also misconstrues Dr. Brown's characterization of well-respected texts in the field of scientific psychology as illegitimate. Dr. Brown described several articles, including a peer-reviewed article on institutional betrayal trauma as a basis for her analysis. That article was published in *American Psychology*, a top journal in her scientific field that has a 99% rejection rate in its acceptance of peer-reviewed scholarship. Defendant's counsel mischaracterized Dr. Brown's description to insinuate that the theory itself has a 99% rejection rate.  Dr. Brown's full testimony stated:

> So, for example, there is a whole body of peer-reviewed literature topics that I speak to in my report, betrayal trauma and institutional betrayal, well-respected publication; in fact, one article published in the premier journal of the American Psychological Association that has about a 99 percent rejection rate. So there's this large body of peer-reviewed materials on betrayal and institutional betrayal, and you won't see those words anywhere in the DSM. But there is a 25-year science base about those topics and data about what those experiences are and the effects that they have on people, for example. *Saucedo Decl.*,  Exh. C, Dr. Brown deposition, 26: 8-19.

Ultimately, Defendant's attempts to mischaracterize Dr. Brown's testimony in this case miss the point: because her testimony is based on generally accepted methods for forensic psychology, it is reliable regardless of her opinions about the DSM.

***2. The Relevance of Dr. Brown's Testimony***

The legal standard for relevance requires that the court determine the relevance of the psychological evaluation the expert conducted, and not the expert's ultimate conclusion. *United*

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DR. LAURA BROWN**, CASE NO. 3:21-CV-05411-DGE

10

*States v. Christian*, 749 F.3d 806, 811 (9th Cir. 2014), *overruled on other grounds*, *United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020). That is, "expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano*, 598 F.3d at 564. Here, Dr. Brown's analysis meets this standard. The pertinent inquiry is whether Plaintiffs suffered the requisite level of emotional or mental harm for damages. Dr. Brown's forensic psychological analysis addresses this precise question It bears repeating that the relevant question is **not** whether Plaintiffs suffered or continue to experience a psychological disturbance expressly recognized by or mentioned in the DSM-5.

The admissibility of expert testimony depends on whether the proffered testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Rahm*, 993 F.2d 1405, 1411 (9th Cir. 1993) ("A district court may not exclude proffered expert testimony simply because the defendant's condition does not fit within the expert's—or the district court's own—concept of mental 'disorder.'"). Here, Dr. Brown's testimony will address Plaintiffs' mental and emotional harm caused by Defendant's discriminatory treatment. Dr. Brown's testimony sheds light on the harms of discrimination as Plaintiffs experienced it, and will allow the jury to comprehend the psychological effects of Plaintiffs' work experiences at Clark County. As such, Defendant does not challenge Dr. Brown's methodology, nor does it challenge her conclusions. Instead, Defendant mistakenly argues that Dr. Brown "assumed" a set of facts that would lead her to conclude that Plaintiffs suffered trauma.

Defendant further argues that "institutional betrayal trauma," "betrayal trauma," and "trauma related to microaggressions" are not specifically mentioned in the DSM-5. Although technically true (at the moment), this is utterly beside the point. First, Plaintiffs' injuries are appropriately addressed by the more inclusive wording of the diagnosis, "Other specified trauma and stressor disorders, DSM 5 code 309.89" Second, the DSM-5 is a manual written by psychiatry that catalogues disorders for diagnostic purposes It is not a comprehensive treatise of the harms that may be caused by discriminatory treatment, especially those harms well-described by research in scientific psychology. Third, Dr. Brown's method for determining the levels of psychological and emotional harm suffered by Plaintiffs is both widely accepted in the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DR. LAURA BROWN, CASE NO. 3:21-CV-05411-DGE

11

community of psychologists practicing in the overlap of trauma psychology and forensic practice and is thus relevant to the jury's determination regarding the extent of Plaintiffs' damages because of Defendant's discrimination.

Defendant cites *Scholl v. United States* for the proposition that an expert must identify a specific disorder in the DSM-5 to render the expert's testimony relevant. In *Scholl*, the defendant attempted to proffer expert evidence of a disorder not mentioned in the DSM-4 to explain why the defendant failed to file taxes on gambling activity. This case is wholly inapposite. The court in *Scholl* did not determine the validity of the proffered evidence. Rather, the court found that the expert testimony was not a "fit" under the *Daubert* standard because testimony regarding a party's pathological denial of his gambling losses would be irrelevant to whether he could have truthfully reported his gambling *income* on his tax returns. Whether a specific disorder under the DSM-4 was mentioned was irrelevant to the ultimate question of fact in that case. Similarly, *Scholl* is utterly irrelevant to whether Dr. Brown's analysis and methodology as a forensic psychologist supports her opinions about the emotional and mental harm suffered by Plaintiffs.

### B. Dr. Brown's Testimony Should Be Admitted to Assist the Trier of Fact

Dr. Brown, a forensic psychologist, relied on treatises, books, peer-reviewed articles, and her decades of practice and experience to arrive at her opinions in this case. She mentioned just two of those sources in her deposition testimony, both of which are peer-reviewed:

1. Carly Parnitzke Smith and Jennifer J. Freyd, *Institutional Betrayal*, 69 American Psychologist 575-587 (American Psychological Association, September 2014).

2. Kevin Nadal, *Microaggressions and Traumatic Stress: Theory, Research and Clinical Treatment* (American Psychological Association, 2018).

Dr. Brown did not rely on ***any*** of the articles cited in Defendant's motion to exclude her testimony. Plaintiffs are, to put it mildly, quite puzzled that Defendant included those four articles that have nothing to do with Dr. Brown's testimony. Therefore, those articles should be stricken from Defendant's Motion, as they have no connection with Dr. Brown's expert opinions and her report.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DR. LAURA BROWN, CASE NO. 3:21-CV-05411-DGE

12

# CONCLUSION

For the foregoing reasons, the Court should deny Defendant Clark County's motion to exclude or limit the testimony of Plaintiffs' psychological expert, Dr. Laura Brown.

Dated: March 6, 2023

I certify this memorandum contains __4174__ words, in compliance with the Local Civil Rules.

Respectfully submitted,

MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND

*/s/ Leticia Saucedo*
Luis Lozada
Leticia Saucedo
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, 11th floor
Los Angeles, CA 90014
Facsimile: (213) 629-0266
Email: llozada@maldef.org
          lsaucedo@maldef.org

Roger M. Townsend, WSBA No. 25525
BRESKIN, JOHNSON, TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Telephone: (206) 652-8660
Facsimile: (206) 652-8290
Email: rtownsend@bjtlegal.com

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DR. LAURA BROWN, CASE NO. 3:21-CV-05411-DGE

13

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2023, I electronically transmitted the attached documents to the Clark's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants in this matter.

Dated: March 6, 2023

*/s Ann M. Iarossi*
Ann M. Iarossi, Legal Assistant