1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

HONORABLE DAVID ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

ELIAS PEÑA, ISAIAH HUTSON, and RAY ALANIS,

Plaintiffs,

v.

CLARK COUNTY, WASHINGTON,

Defendant.

NO. 3:21-cv-05411-DGE

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL**

Note on Motion Calendar: 08/04/2023

## I.    INTRODUCTION

Defendant had its opportunity to make its full case to a duly empaneled jury and lost. Defendant now asks the Court to take the extraordinary measure to intervene and give Defendant another opportunity to try its luck with a different set of jurors. The Court should decline Defendant's invitation. The jury's verdict is supported by substantial evidence and nothing that Defendant complains about constitutes valid grounds for a new trial. Accordingly, the Court should deny Defendant's motion. Dkt. 190.

## II.    BACKGROUND

The Court held a pre-trial conference on May 12, 2023, Dkt. 96, and trial began on May 22, 2023, and ended on June 15, 2023, Dkts. 127, 164. On June 20, 2023, the jury returned a verdict in favor of Plaintiffs on their claims under the WLAD but not under Title VII. *See* Dkts. 174–76. On June 21, 2023, this Court entered a judgment on the jury verdict, stating that the "jury found that Defendant Clark County is liable for hostile work environment harassment of

1   Plaintiffs Elias Peña, Isaiah Hutson and Ray Alanis on the basis of their race and/or national

2   origin under Washington's Law Against Discrimination." Dkt. No. 179.

3        On July 19, 2023, Defendant filed a motion for a new trial. See Dkt. 190.

4   **III.   ARGUMENT**

5        **a.    Legal Standard**

6        "The court may, on motion, grant a new trial . . . after a jury trial, for any reason for which

7   a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P.

8   59(a)(1)(A). Federal Rule of Civil Procedure 59 "does not enumerate the grounds that support

9   the extraordinary relief of a new trial." *Yowan Yang v. ActioNet, Inc.*, No. CV 1400792-AB

10  (PJWX), 2017 WL 2117028, at *9 (C.D. Cal. Jan. 23, 2017). However, historically recognized

11  grounds include claims "that the verdict is against the weight of the evidence, that the damages

12  are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J.*

13  *Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311

14  U.S. 243, 251 (1940)).

15       **b.    The Jury's Verdict is Supported by Substantial Evidence**

16       "A district court may not grant a new trial simply because it would have arrived at a

17  different verdict." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819

18  (9th Cir. 2001). Rather, the court "must uphold a jury verdict if it is supported by substantial

19  evidence." *Guy v. City of San Diego*, 608 F.3d 582, 585 (9th Cir. 2010). Evidence is substantial

20  where it is "adequate to support the jury's conclusion, even if it is also possible to draw a contrary

21  conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

22       Here, Defendant makes no argument that the jury could not reach its decision due to a

23  lack of evidence. Nor could it. The Court recognized that this case boiled down to credibility and

24  which side's story the jury believed. *See* Nunez Decl. Ex. F at 166–67 (noting that "it is so night

25  and day, the two different recollections"); *See* Ex. I at 27 (noting that the jury is "either going to

26  believe plaintiffs or they are going to believe the defense. That's really the case."). Defendant's

27  attempt to disturb the jury's decision to believe Plaintiffs' version of events should be rejected.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR NEW TRIAL - 2
Case No. 3:21-cv-05411-DGE

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

### c.      Plaintiffs' Attorneys Conducted Themselves Professionally Throughout the Trial

Defendant's accusations of attorney misconduct fall apart upon closer inspection. "A new trial on the grounds of attorney misconduct is not lightly given." *Athena Cosms., Inc. v. AMN Distribution Inc.*, No. 2:20-cv-05526-SVW-SHK, 2021 WL 6882299, at \*5 (C.D. Cal. Dec. 21, 2021). "[T]o be warranted, the 'flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'" Id. (quoting *Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1286 (9th Cir. 1984)). For example, in *Athena Cosmetics*, the Court granted a new trial based on attorney misconduct when the plaintiff's attorney disobeyed warnings from the Court, interrupted proceedings throughout trial (which resulted in a contempt citation), interrupted and yelled at the Court, and had to be removed from the courtroom. 2021 WL 6882299 at \*2–3.

Even when there is some misconduct, the need for a new trial is mitigated (1) when the misconduct is "isolated, rather than persistent;" (2) when the "offending remarks" occur mainly in the opening statement or closing argument; (3) when the opposing party fails to contemporaneously object; and (4) when the jury awards reasonable damages. *Kehr*, 736 F.2d at 1286. Here, Defendant does not make the requisite showing of misconduct that permeated the entire proceedings. Instead, all Defendant offers are isolated incidents, primarily occurring during opening and closing statements, that Defendant misconstrues or exaggerates. Plaintiffs address them in turn.

### 1.      Plaintiffs' Reference to Evidence of Disparate Treatment During Opening Statement Was Appropriate.

Defendant misconstrues and outright ignores parts of the record to argue that Plaintiffs engaged in misconduct during opening statements. *See* Dkt. 190 at 4–5. On May 22, 2023—one day prior to opening statements—Clark County filed objections to Plaintiffs' proposed PowerPoint presentation ("Presentation") that raised more than eighty challenges. Dkts. 124, 125.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR NEW TRIAL - 3
Case No. 3:21-cv-05411-DGE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  Following the Court's ruling prohibiting the proposed Presentation, Plaintiffs reviewed each of

2  Defendant's objections and modified the Presentation.

3  The next day, Plaintiffs informed the Court that they updated the Presentation. *See* Ex. B

4  at 4–5 ("We went through all of the objections that the defendant had and changed everything

5  that the defendant asked for. It should be ready."). Plaintiffs further argued that—contrary to

6  Defendant's objections regarding disparate treatment evidence in the Presentation—the Ninth

7  Circuit allows plaintiffs to present evidence of seemingly race-neutral conduct to support a

8  hostile work environment claim. *See Id*. at 5, 19, 21, 23. The Court stated that it would revisit the

9  issue once it had a chance to look at the case law provided by Plaintiffs and granted permission

10  for Plaintiffs to use the modified Presentation, with certain limitations. *See Id*. 26:6-11.

11  During Plaintiffs' opening statement, Defendant objected several times on the basis that

12  the Court's order on summary judgment (Dkt. 90) precluded Plaintiffs from referencing instances

13  of disparate treatment. *See* Ex. B at 39–40. After multiple similar objections, the Court excused

14  the jury to address the issue. See id. Defendant's counsel then stated the following: "Your Honor,

15  the Court has very clearly ruled on this. This slide and the argument is replete with supervisor

16  discipline, supervisor reprimand, supervisor -- I mean, all of these are the disparate treatment

17  allegations we talked about." Id. at 40 (emphasis added). Defendant was—and still is—wholly

18  incorrect on this point as evident by the Court's subsequent ruling.

19  That same day, after reviewing the case law provided by Plaintiffs, the Court reversed

20  itself and allowed Plaintiffs to introduce evidence of disparate treatment to support their claims

21  of hostile work environment. *See Id*. at 130–131 (citing cases), 132 ("So I'm basically reversing

22  what I initially was thinking I was going to rule, and I am going to allow for this questioning to

23  go forward."). As a result, Plaintiffs did not engage in any misconduct because the Court

24  tentatively allowed Plaintiffs to make broad arguments regarding differential treatment in the

25  opening statement, and the Court subsequently reversed its ruling to allow Plaintiffs to introduce

26  specific incidents of disparate treatment to demonstrate a hostile work environment. Because

27  Plaintiffs were entitled to introduce evidence of disparate treatment all along, Defendants cannot

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR NEW TRIAL - 4
Case No. 3:21-cv-05411-DGE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

show any prejudice by Plaintiffs' Presentation referencing the evidence the jury would hear at trial.

It is also worth noting that Defendant raised its concerns about the opening statement but—instead of moving for a mistrial—decided to allow the case to move forward to a verdict. *See Id*. at 40. Courts may take that into consideration when determining whether to grant a new trial. *See Kehr*, 736 F.2d at 1286 (noting that counsel did not move for a mistrial after learning of alleged misconduct).

### 2.    The Court Allowed Plaintiffs to Argue Facially Neutral Conduct in Their Closing Statement.

Defendant misconstrues the record again when it argues that Plaintiffs' counsel violated the Court's orders during closing statement by mentioning "facially neutral" conduct. *See* Dkt. 190 at 7–8. Defendant points to the Court's decision not to allow a jury instruction regarding facially neutral conduct and argues Plaintiffs were precluded from even mentioning "facially neutral conduct" in argument. *Id*. at 8 (citing to Ex. I at 108). However, the record shows that the Court explicitly allowed Plaintiffs to argue the applicability of facially neutral conduct. *See* Ex. H at 13 ("I don't think the elements prevent you from making this argument. I think the elements identified in the pattern instruction allow you to make this argument still.").

Further, the Court clarified that Defendant had not objected to Plaintiffs making facially neutral arguments, or that Plaintiffs were precluded from doing so. *Id*. at 13 ("I don't hear an objection from Ms. Freeman saying, 'objection, that's not the law.'"). Thus, there was no indication that Plaintiffs could not make those arguments. Interestingly, Defendant argued that Plaintiffs could make arguments and were allowed to introduce evidence about facially neutral conduct. *See Id*. at 11 ("They have been allowed to or permitted to introduce evidence, but they still will need to argue to the jury how that evidence meets this standard, because this is the standard for a Title VII harassment claim.").

Finally, there is no evidence that Defendant was prejudiced in any capacity by Plaintiffs uttering the phrase "facially neutral" during closing arguments. Besides the weight of legal

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR NEW TRIAL - 5
Case No. 3:21-cv-05411-DGE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    authority supporting the use of facially neutral conduct, "[a]ttorneys have more leeway in closing

2    arguments to suggest inferences based on the evidence, highlight weaknesses in the opponent's

3    case, and emphasize strengths in their own case." *Soltys v. Costello*, 520 F.3d 737, 745 (7th Cir.

4    2008). "[I]mproper comments during closing arguments rarely rise to the level of reversible

5    error." *Id*. Further, the jury received instructions that mitigate any harm. For example, the Court

6    instructed the jury before closing arguments that any "[a]rguments and statements by lawyers are

7    not evidence." Dkt. 167, Jury Instruction 8. The jury was also provided an instruction regarding

8    the elements to consider in deciding a hostile work environment claim. Dkt. 167. "The jury is

9    regularly presumed to accept the law as stated by the court, not as stated by counsel." *United*

10   *States v. Rodrigues*, 159 F.3d 439, 451 (9th Cir. 1998).

11          Accordingly, Plaintiffs' closing statement provides no basis for granting a new trial.

12          **3.    The Court Did Not Issue an Order Prohibiting All Questioning**

13                **Regarding Witness Pay.**

14          Defendant misconstrues the Court's ruling regarding witness pay and attempts to stretch

15   it to cover areas for which the Court did not prohibit testimony. During the examination of

16   Kathleen Otto, Plaintiffs' counsel sought to question her about the fact that Plaintiffs were not

17   being paid for their time at trial. *See* Ex. G at 35. Defendant's counsel objected based on

18   relevance. *See Id*. The Court sustained the objection and, after argument from both sides,

19   reasoned that it was "a stretch to say, the fact that [Plaintiffs] are not being paid for appearing in

20   court for their claim is evidence of ongoing discrimination against them." *Id*. at 37. Defendant

21   did not move the Court for an order to exclude all testimony involving witness pay and the Court

22   did not order Plaintiffs to not bring up pay at all for other witnesses. *See Id.*

23          Nevertheless, Defendant argues that Ms. Saucedo's questioning of Dominic Catania

24   about whether he was being paid is grounds for a new trial. See Dkt. 190 at 6; *see* Ex. G at 181.

25   Defendant's counsel objected without explaining the basis, and the Court granted the objection.

26   *See Id*. However, whereas the line of questioning for Ms. Otto concerned discriminatory

27   treatment of Plaintiffs, the pay question to Mr. Catania was meant to convey witness bias and the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR NEW TRIAL - 6
Case No. 3:21-cv-05411-DGE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

influence Clark County had over its employees. *See, e.g.*, Ex. E at 111 (Defendant's counsel asked a witness how much Plaintiffs paid her).

It is unreasonable to claim that Plaintiffs' counsel disobeyed a Court order when no such order existed. Further, Defendant's counsel did not move the Court for a curative instruction, which it presumably would have done if the questioning was harmful.

**4.      Plaintiffs' Counsel Did Not Intentionally Solicit Testimony in Violation of the Court's Orders.**

Plaintiffs' counsel adhered to the Court's orders regarding Defendant's motions in limine 4 and 5. *See* Dkt. 190 at 6–7. Defendant's motion in limine number 4 concerned evidence relating to non-race or national origin related complaints of discrimination. *See* Dkt. 61 at 6–7. Defendant's motion in limine number 5 concerned evidence and argument regarding temporally remote events. *See Id.* at 7–9.

Defendant points to Ms. Saucedo's direct examination of Mr. Flores to suggest that she intentionally tried to elicit testimony that was prohibited by the Court's orders. *See* Dkt. 190 at 7. That is not the case. Defendant's counsel opened the door to examine Mr. Flores when she put him on the stand and asked him if he had ever heard anyone use racial slurs at work. *See* Ex. H at 166. Mr. Flores only mentioned alleged comments made by Plaintiff Alanis. *See Id.* Ms. Saucedo then proceeded to cross-examine Mr. Flores regarding that same topic. *See Id.* at 168–169. Seeking to impeach Mr. Flores, Ms. Saucedo specifically asked him if anyone had ever used a racial slur against him during his whole time at Clark County. See id. Mr. Flores answered, "Not racial, no." *Id.* at 169. Plaintiffs' counsel then sought to clarify what Mr. Flores meant by that, which prompted an objection by Defendant's counsel. *See Id.* However, Ms. Saucedo stated that she did not seek to elicit testimony regarding barred testimony because she did not know what Mr. Flores was going to say. *See* Ex. H at 171–72. The Court considered Defendant's argument regarding alleged misconduct as well as the question's harm and properly concluded that no curative instruction was needed because Mr. Flores did not answer the question. *See Id.*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR NEW TRIAL - 7
Case No. 3:21-cv-05411-DGE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    at 172. Thus, (1) Ms. Saucedo did not intentionally attempt to elicit barred testimony, and (2)

2    there was no harm because the witness did not answer the question.

3          Defendant also includes a footnote referring to Mr. Nunez's arguments regarding the

4    testimony of Clayton Tikka. *See* Dkt. 190 at 7, n. 3. Before Mr. Nunez even called Mr. Tikka to

5    the stand—and outside the presence of the jury—Defendant's counsel objected, line by line, to a

6    months-old declaration submitted by Mr. Tikka in support of Plaintiffs' opposition to

7    Defendant's motion for summary judgment. *See* Ex. D at 51. Defendant portrays itself as the

8    victim of this lengthy argument regarding Mr. Tikka's potential testimony and claims that it had

9    to waste valuable trial time. *See Id*. But as the Court stated, any objections to Mr. Tikka's

10   declaration should have been made by a motion in limine to avoid wasting time at trial. *See Id*.

11   at 86–87 ("If you have trouble with the declaration, it should be part of a motion in limine."").

12   Although Mr. Nunez argued that certain testimony should be allowed to corroborate Plaintiff

13   Hutson's testimony from the day before, *see id*. at 52, this occurred outside the presence of the

14   jury and was necessary to preserve the record on the issue.

15          **d.       The Court's Evidentiary Rulings Are Not Grounds for a New Trial.**

16          Defendant's criticisms of the Court fare no better than its criticisms of Plaintiffs' counsel.

17   "District courts are granted broad discretion in admitting evidence, and their rulings are reviewed

18   only for an abuse of discretion." *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir.

19   1995). "A party seeking reversal for evidentiary error must show that the error was prejudicial,

20   and that the verdict was 'more probably than not" affected as a result." *Boyd v. City & County of*

21   *San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009) (quoting *McEuin v. Crown Equip. Corp*., 328

22   F.3d 1028, 1032 (9th Cir. 2003)). "As long as it appears from the record as a whole that the trial

23   judge adequately weighted the probative value and prejudicial effect of proffered evidence before

24   its admissions, we conclude that the demands of Rule 403 have been meet." *United States v.*

25   *Verduzco*, 373 F.3d 1022, 1029 n. 2 (9th Cir. 2004).

26   ///

27

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR NEW TRIAL - 8
Case No. 3:21-cv-05411-DGE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**1.    The Court's Decision to Prohibit Evidence of Remedial Action Taken by Clark County in Other Situations was Appropriate.**

The Court's ruling excluding testimony and evidence related to two former employees (Vincent Taylor and Bill Gaylord) that were terminated for using racially derogatory language was proper because the evidence is irrelevant to Plaintiffs' claims of a hostile work environment. Moreover, the Court previously granted Defendant's motion in limine to exclude evidence concerning other discipline and complaints unrelated to the issues at trial, *see generally* Ex. A, and the Court appropriately denied Defendant's desire to have it both ways.

The Court asked Plaintiffs whether they intended to argue before the jury the broad concept that Clark County has a history of failing to respond to all racial complaints or present a narrow argument that it did not adequately respond to Plaintiffs' complaints. See Ex. I at 8. Plaintiffs informed the Court that they intended to argue the latter. *See Id*. Consequently, the Court held that "to the extent that there is some type of relevance, the probative value is substantially outweighed by unfair prejudice or confusing the issues" and "we are not here to argue about what [Clark County] did with other individuals' claims." *Id*. at 11. The Court further emphasized that testimony concerning the termination of former Clark County employees "leads us astray on what the issues are in this case with these other complaints." *Id*. at 12.

The Court was correct in its assessment that any probative value of Clark County's response to other complaints is substantially outweighed by its risk of confusing the issues and misleading the jury. The Court explained, on more than one occasion, that "it is not relevant to these plaintiffs' claims or whether their claims were acted upon […] it would technically subject to the Motion in Limine about other complaints" and "what happened between approximately 2016 and 2021, that's really the meat of this case." Ex. G at 84:10-16; Ex. I at 28:22-24. There was no error in the Court's ruling.

Even if there was an error, Defendant does not even try to demonstrate how any error "more likely than not affected the verdict." *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004). Accordingly, there is no basis to conclude that the Court erred when it excluded irrelevant

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR NEW TRIAL - 9
Case No. 3:21-cv-05411-DGE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    testimony and evidence concerning two former employees that are unrelated to Plaintiffs' claims

2    that Clark County failed to adequately respond to their allegations.

3           **2.      The Court's Decision to Allow Testimony Regarding Conversations**
4                     **at Clark County About Plaintiffs' Future Was Not Erroneous.**

5    Defendant argues that the Court "inexplicably" allowed testimony from Marc Smith regarding a

6    conversation he had with Dominic Catania concerning Plaintiffs' ongoing employment at Clark

7    County following trial. *See* Dkt. 190 at 10-11. First, Defendant does not show any harm this

8    testimony caused beyond the need to call a witness, Josh Lipscomb—who was already on

9    Defendant's trial witness list. See Dkt. 190 at 11; Dkt. 97 at 21 (listing Josh Lipscomb as a trial

10   witness).

11          Second, Defendant's hearsay analysis is incorrect. Mr. Catania's testimony was offered

12   not for the truth of the matter that Plaintiffs were going to get fired or that Josh Lipscomb made

13   the statements. Instead, it was introduced for the purpose of showing that employees at Clark

14   County were discussing Plaintiffs' lawsuit in a negative light, which is evidence of the type of

15   work environment Plaintiffs work in. *See* Ex. H at 40. The Court recognized this purpose when

16   it overruled Defendant's objection. *See Id*. at 41 ("The whole defense is there is no hostile work

17   environment so they would be rebutting that by saying, wait a minute, this occurred.").

18          Third, Defendant claims the purpose of the evidence was to support a retaliation claim.

19   *See* Dkt. 190 at 11. However, the testimony was introduced as evidence of a hostile work

20   environment. *See* Ex. H at 38–41. The Court recognized the propriety of such evidence when it

21   ruled on Defendant's motion in limine. Ex. G at 69–70. (acknowledging that "[t]here probably

22   will be something that arguably could be considered as a retaliation, but also could be considered

23   as creating a hostile work environment"); *see King v. Kempthorne*, No. CIV 05-0575 JB/WDS,

24   2008 WL 5978898, at *5 (D.N.M. Sept. 30, 2008) (holding that a "set of activities . . . can support

25   a retaliation claim and can also be part of [Plaintiffs]'s hostile-work environment claim").

26          Accordingly, the Court's ruling on this issue is no grounds for a new trial.

27          **3.      Isaiah's Daughter's Medical Condition.**

PLAINTIFFS' OPPOSITION TO DEFENDANT'S            **BRESKIN | JOHNSON | TOWNSEND** PLLC
MOTION FOR NEW TRIAL - 10                        1000 Second Avenue, Suite 3670
Case No. 3:21-cv-05411-DGE                       Seattle, Washington 98104  Tel: 206-652-8660

1   `Defendant makes a cursory argument regarding the Court's Fed. R. Evid. 403 analysis

2   when it allowed a jury question pertaining to the exact medical condition of Plaintiff Hutson's

3   daughter. *See* Dkt. 190 at 11. The Court properly concluded that the testimony's probative value

4   related to Plaintiff's emotional distress damages was not substantially outweighed by a risk of

5   unfair prejudice. *See* Ex. C 132–35, 138. The Court curtailed any prejudice by limiting the

6   response to just the name of the condition. *See Id*. Defendant cites to no legal authority that the

7   Court's conclusion is grounds for a new trial.

8       e.       **The Jury Verdicts Are Not Inconsistent**

9       There is no legal basis for a new trial based on the jury's verdicts. First, Defendant waived

10  any challenge to the jury verdicts by not raising the issue at trial. The Ninth Circuit has held that

11  the "potential for a legally irreconcilable verdict should be addressed through jury instructions

12  properly proposed under Rule 51" and that "instructional errors are waived if not raised in a

13  timely fashion." *Zhang v. Am. Gem Seafoods, Inc*., 339 F.3d 1020, 1037 (9th Cir. 2003). If

14  Defendant genuinely believed that the jury could not find liability under only one claim, it would

15  have requested a jury instruction to that effect. Defendant made no such request.

16      Second, Defendant provides no legal support for its claim that the jury's general verdicts

17  in favor of Plaintiffs under WLAD are inconsistent with the jury's general verdicts in favor of

18  Defendant under Title VII. Dkts. 174–176. Defendant's vague citation to *Conti v. Corp. Servs.*

19  *Grp., Inc.*, 30 F.Supp. 1051 (W.D. Wa. 2014) is inapposite. The section Defendant appears to

20  rely on concerns inconsistencies between a jury's special verdicts, but the Conti court explicitly

21  noted that general verdicts cannot be disturbed under Ninth Circuit precedent. *See Conti*, 30

22  F.Supp. at 1075–76 (citing *Zhang*, 339 F.3d at 1031). Indeed, the Ninth Circuit has not

23  recognized an inconsistent general verdict as one of the historically recognized grounds to grant

24  a new trial. *See Zhang*, 339 F.3d at 1035–36; *Venezia v. Bentley Motors, Inc*., No. CV-07-1511-

25  PHX-SMM, 2009 WL 10673383, at *3 (D. Ariz. Apr. 2, 2009) ("The Supreme Court and the

26  Ninth Circuit have not recognized an inconsistent verdict as one of the historically recognized

27  grounds allowing the court to grant a new trial."). The Ninth Circuit went as far as to say that

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR NEW TRIAL - 11
Case No. 3:21-cv-05411-DGE

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

"the law forbids a judge from upsetting general verdicts merely because they are inconsistent as to different claims." *Zhang*, 339 F.3d at 1036.

Further, the WLAD and Title VII have similarities, but they are not identical. One need only look at the instructions to find multiple ways in which they differ, and the jury's split verdict simply reflects its close reading of the Court's instructions. And regardless, the two laws "simply are not predicated on one another." *Bonner v. Normandy*, No. C07-962RSM, 2009 WL 279070, at *2 (W.D. Wash. Feb. 2, 2009). Because WLAD and Title VII are not predicated on each other, there is no grounds for a new trial based on inconsistent verdicts. *See Zhang*, 339 F.3d at 1037; *Lam v. City of San Jose*, No. 14-cv-00877-PSG, at *1 (N.D. Cal. May 13, 2016) ("Even if the jury's verdict was internally inconsistent, the Ninth Circuit has long preserved to the jury's prerogative of issuing a legally irreconcilable general verdict."). Accordingly, Defendant's argument that it is entitled to a new trial because the jury's verdicts are inconsistent is meritless and not recognized as a ground to grant a new trial under Rule 59.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion for a new trial.

I certify that this memorandum contains 4,113 words, in compliance with the Local Civil Rules.

DATED: July 31, 2023.

BRESKIN JOHNSON & TOWNSEND, PLLC

By:  s/ *Daniel F. Johnson*
Roger M. Townsend, WSBA #25525
Daniel F. Johnson, WSBA #27848
1000 Second Avenue, Suite 3670
Seattle, WA  98104
(206) 652-8660
djohnson@bjtlegal.com
rtownsend@bjtlegal.com

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR NEW TRIAL - 12
Case No. 3:21-cv-05411-DGE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND

By: */s Fernando Nunez*
Fernando Nuñez (Pro Hac Vice)
Luis Lozada (Pro Hac Vice)
CA Bar No. 344357
634 S. Spring Street, 11th Floor
Los Angeles, CA 90014
Phone: 213-629-2512
Email: fnunez@maldef.org
Email: llozada@maldef.org

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION FOR NEW TRIAL - 13

Case No. 3:21-cv-05411-DGE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660