UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ELIAS PEÑA, ISAIAH HUTSON, and RAY ALANIS,<br><br>                Plaintiffs,<br>   v.<br><br>CLARK COUNTY,<br><br>                Defendant. | CASE NO. 3:21-cv-05411-DGE<br><br>ORDER DENYING MOTION FOR NEW TRIAL |

Presently before the Court is Defendant's motion for a new trial. (Dkt. No. 190.) For the reasons discussed below, Defendant's motion is DENIED.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Elias Peña, Isaiah Hutson, and Ray Alanis are Latino employees of the Roads Division of Clark County's Public Works Department. (Dkt. Nos. 47-3 at 4; 53-1 at 5; 53-2 at 5.) In their Amended Complaint, Plaintiffs filed claims for denial of equal protection under 42 U.S.C. § 1983 and disparate treatment under Title VII, 42 U.S.C. § 1981, and the Washington Law Against Discrimination ("WLAD"). (Dkt. No. 19.) Plaintiffs also filed hostile work

environment claims under Title VII, 42 U.S.C. § 1981, and WLAD. (*Id*.) On April 28, 2023, the Court granted in part Defendant's motion for summary judgment, dismissing Plaintiffs' claims for disparate treatment brought pursuant to Title VII and WLAD, Plaintiffs' 42 U.S.C. § 1983 equal protection claims, and Plaintiffs' 42 U.S.C. § 1981 claim against the County. (Dkt. No. 90.) The Court denied Defendant's motion for summary judgment with respect to Plaintiffs' Title VII and WLAD hostile work environment claims. (*Id*.)

Following a trial, the jury returned a verdict in favor of Plaintiffs with respect to their claims under WLAD. (Dkt. Nos. 174, 175, 176.) The jury returned a verdict in favor of Defendant on each of Plaintiffs' Title VII claims. (*Id*.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 59(a)(1)(A), the Court may grant a new trial, "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Rule 59 does not specify the grounds on which a motion for a new trial may be granted. *Zhang v. Am. Gem Seafoods, Inc*., 339 F.3d 1020, 1035 (9th Cir. 2003). Rather, the Court is "bound by those grounds that have been historically recognized." *Id*.

Historically recognized grounds include, but are not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc*., 481 F.3d 724, 729 (9th Cir. 2007), quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). The Ninth Circuit has held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id.,* quoting *Passantino v. Johnson & Johnson Consumer Prods*., 212 F.3d 493, 510 n. 15 (9th Cir.2000).

ORDER DENYING MOTION FOR NEW TRIAL - 2

The grant of a new trial is "confided almost entirely to the exercise of discretion on the part of the trial court." *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990), quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).

### III.   DISCUSSION

**A.  Attorney Misconduct**

Defendant argues misconduct by Plaintiffs' attorneys warrants a new trial. Attorney misconduct can justify granting a new trial, but only where "the flavor of misconduct sufficiently permeates an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Settlegoode v. Portland Public Schools*, 371 F.3d 503, 516–517 (9th Cir. 2004) (internal citations omitted).

"Great deference is given to the trial judge to gauge prejudicial effect of attorney misconduct." *McIntosh v. Northern Cal. Universal Enterprises, Inc.*, Case No. No. CV F 07–1080 LJO GSA, 2010 WL 2698747 at * 12 (E.D. Cal. Jul. 10, 2010) (collecting cases). The trial court "is in a superior position to gauge the prejudicial impact of counsel's conduct during the trial" and the Ninth Circuit will not disturb the district court's ruling absent a "definite and firm conviction that the court committed a clear error of judgment in the conclusion it reached." *Anheuser–Busch Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995) (internal citation omitted).

   1. <u>Opening Statement – PowerPoint Presentation</u>

On May 19, 2022, Plaintiffs' counsel produced a 118 page PowerPoint presentation Plaintiffs intended to use during their opening statement. On May 22, 2023, Defendant filed an objection to Plaintiffs' use of this presentation, stating many of the slides were argumentative and referred to disparate treatment claims previously dismissed by the Court. (Dkt. No. 124.)

Having considered Defendant's objection, the Court issued the following minute order on May 23, 2023:

> The Court agrees with the general proposition that the slide show contains instances of argumentative characterizations, references to disparate treatment allegations that were dismissed on summary judgment, instructions about the law that have not been given, photos that are improper (as discussed on May 22, 2023), and slides referencing experts that are improper.
>
> The jury will hear opening statements at 9:00 a.m. on May 23, 2023. The Court is unable, in the half an hour before the trial begins, to review and hear argument as to each potentially objectionable slide (118 total slides). Because the PowerPoint slides in their present form are improper, the slide presentation in its present form is prohibited.
>
> The only guidance the Court will offer at this time is that opening statements and any slides should focus on the evidence that will be submitted during the trial without argumentative characterizations or claims that have been dismissed on summary judgment.

(Dkt. No. 128.)

On the morning of May 23, 2023, Plaintiffs' counsel represented to the Court that she reviewed and addressed Defendant's objections. (Dkt. No. 191-2 at 5.) During Plaintiffs' opening remarks, Defendant's counsel objected four times to slides in Plaintiffs' PowerPoint presentation. (Dkt. No. 191-2 at 35, 36, 39, 40.) After the fourth objection, the Court excused the jury. (*Id*. at 40.) After hearing argument from the parties, Plaintiffs' counsel agreed to remove two remaining slides that Defendant's counsel stated were argumentative. (*Id*. at 44.)

Statements Regarding "Paid" Status of Witnesses

Defendant contends Plaintiffs' counsel intentionally violated the Court's ruling regarding the "paid" status of certain witnesses. (Dkt. No. 190 at 5–6.) During Plaintiffs' direct examination of County Manager Kathleen Otto, Plaintiffs' counsel asked:

> Q: I would like to ask you about the question about how time is being managed for this trial and whether, who is getting paid for their time in Clark County when they are here at this trial.

ORDER DENYING MOTION FOR NEW TRIAL - 4

>	A: Okay.
>
>	MS. FREEMAN: Objection, Your Honor. It would be irrelevant.
>
>	THE COURT: Sustained.

(Dkt. No. 191-7 at 35.)

After Defendant's objection, the Court excused the jury at Plaintiffs' request. (*Id*.) Plaintiffs' counsel argued evidence that Defendant's witnesses were continuing to receive pay from Clark County during the trial was relevant to establish bias on the part of Defendant's witnesses and the unequal treatment provided to Plaintiffs. (*Id*.) After hearing argument, the Court sustained Defendant's objection, rejecting Plaintiffs' contention that the County's decision not to pay Plaintiffs for appearing in court was evidence of ongoing discrimination against them. (*Id*. at 36–37.)

Later that day, during cross examination of Dominic Catania, Plaintiffs' counsel asked the witness:

>	Q: Are you getting paid for your time today?
>
>	A: Yes.
>
>	MS. FREEMAN: Objection, Your Honor.
>
>	MS. MURPHY: Objection.
>
>	THE COURT: Sustained.

(*Id*. at 89.)

2. Solicitation of Testimony in Violation of Court Rulings

Defendant contends Plaintiffs' counsel improperly solicited testimony concerning evidence of events that occurred in 2005, despite the Court's rulings on two motions in limine which excluded evidence of events that occurred prior to Plaintiffs' employment with Clark

ORDER DENYING MOTION FOR NEW TRIAL - 5

County and non-race or national-origin-related complaints of discrimination and unrelated claims and lawsuits.  (Dkt. Nos. 190 at 6–7; 191-12 at 16–26.)

3. Closing Statement – Statements Regarding "Facially Neutral" Conduct

Defendant contends that Plaintiffs' counsel improperly used and attempted to define the term "facially neutral" during their closing argument despite the Court's decision not to give a jury instruction concerning whether facially neutral conduct could give rise to Title VII or WLAD liability on a racial harassment claim.  (Dkt. No. 190 at 7–8.)  In reviewing proposed jury instructions, the Court declined to give an instruction concerning facially neutral conduct, but permitted Plaintiffs to present argument on this point.  (Dkt. No. 191-8 at 10–15.)

4. Analysis

In considering Defendant's motion, the Court cannot find that the "flavor of misconduct" permeated the entire proceeding.  Defendant cites several isolated examples of alleged attorney misconduct that occurred during a lengthy trial.  The Court doubts these incidents caused the jury to be "influenced by passion and prejudice" in reaching its verdict.

When considering a motion for a new trial, a district court judge has the right and duty "to weigh the evidence as he saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the evidence, or ... to prevent, in the sound discretion of the trial judge, a miscarriage of justice." *Murphy*, 914 F.2d at 186.  "The judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir.1987).

During the trial, the Court repeatedly expressed its view that the dispositive issue in this case was the credibility of the witnesses. "There are clearly two distinct -- clearly two distinct records of how things occurred and when they occurred, who said what, when they said what, exactly what was said … [the jury] will either believe one side over the other or they will not … I think there is a real possibility it is an all-or-nothing thing for one side … [o]ne side or the other will not be happy in the end because it is so night and day, the two different recollections." (Dkt. No. 204-6 at 2–3.)

"In the grand scheme of things, honestly, I don't think Dr. Brown or Dr. Vandenbelt's testimonies are the major issue here, in a sense. [Members of the jury] are either going to believe plaintiffs or they are going to believe the defense. That's really the case. If they believe plaintiffs, they are going to award something. If they don't believe plaintiffs, they are not going to award anything. So this is really, in my opinion, a minor issue, if anything at all. It doesn't really change the case." (Dkt. No. 204-9 at 5.)

The Court has not changed its view of this case. The jury believed Plaintiffs rather than Defendant, and found for Plaintiffs on that basis. It is unlikely the conduct of Plaintiffs' attorneys affected the jury significantly, let alone inflamed the passions and prejudices of the jury sufficient to merit a new trial. Further, having observed the trial, the Court cannot say the jury erred in believing Plaintiffs' witnesses over Defendant's. *Landes*, 833 F.2d at 1371–1372 (A new trial should not be granted unless, after giving full respect to the jury's findings, the Court "is left with the definite and firm conviction that a mistake has been committed.").

Factors that mitigate the need for a new trial where alleged attorney misconduct is at issue include: (1) when the misconduct is "isolated, rather than persistent;" (2) when the "offending remarks" occur mainly in the opening statement or closing argument; (3) when the

opposing party fails to contemporaneously object; and (4) when the jury awards reasonable damages. *Athena Cosmetics. Inc. v. AMN Distribution Inc.*, Case No. 2:20-cv-05526-SVW-SHK, 2021 WL 6882299 at * 4 (C.D. Cal. Dec. 21, 2021), citing *Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1286 (9th Cir. 1984).

With respect to the first factor, the Court finds the alleged misconduct, even if it was prejudicial, was isolated rather than persistent. As for the second factor, two of the four incidents at issue here occurred during Plaintiffs' opening and closing statements. Regarding the fourth factor, the jury awarded $200,000.00 in damages per Plaintiff, considerably less than the $800,000.00 requested by Plaintiffs.

Accordingly, the Court finds the alleged misconduct of Plaintiffs' attorneys does not warrant a new trial.

**B. Prejudicial Errors of Law**

Defendant argues prejudicial errors of law by the Court warrant a new trial. "District courts are granted broad discretion in admitting evidence, and their rulings are reviewed only for an abuse of discretion." *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). A new trial is only warranted when an erroneous evidentiary ruling "substantially prejudiced" a party. *Id*.

1. <u>Exclusion of Evidence Regarding Remedial Measures</u>

Defendant contends Clark County was improperly prohibited from introducing evidence that it terminated two individuals who made racially offensive comments. (Dkt. No. 190 at 8–9.) Defendant argues the evidence would have shown County Manager Otto, in consultation with the Human Resources Director Mande Lawrence, upheld the termination of one of these employees in the fall of 2020, during the period relevant to this case. (*Id*. at 9.)

The Court found that the probative value of this evidence was outweighed by potential prejudice and a risk of confusing the issues, because how the County responded to complaints from other individuals was not at issue in this case. (Dkt. No. 191-10 at 10.)

### 2. Testimony Regarding Retaliation for Filing Lawsuit

Defendant argues the Court improperly permitted Plaintiffs to elicit testimony from a witness to the effect that Plaintiffs would be "done" with respect to their employment at Clark County once the trial was over. (Dkt. No. 190 at 9–11.) Defendant contends this testimony was inadmissible hearsay and was proffered as irrelevant evidence of a potential future retaliation claim. (*Id.*)

The Court acknowledged this line of questioning was potentially beyond the scope of cross examination, but ultimately permitted it because of the Court's concerns about judicial efficiency, namely that the witness might otherwise have to be called back for rebuttal. (Dkt. No. 191-8 at 18–22.)

### 3. Testimony Regarding Plaintiffs' Family Members

Defendant contends the Court improperly permitted a jury question and responsive testimony from Plaintiff Hutson concerning the nature of his daughter's special needs. (Dkt. No. 190 at 11.) Defendant objected to this question during the trial, arguing it was irrelevant. (Dkt. No. 191-3 at 6.) The Court permitted the question, finding it was relevant to the question of Hutson's emotional distress damages and that the probative value of the question outweighed any potential prejudice. (*Id.* at 7–9.)

### 4. Analysis

Defendant has not met its burden to prove that the Court's rulings were both erroneous and substantially prejudicial. Establishing that the Court's rulings substantially prejudiced a

party requires the moving the party to demonstrate that "more probably than not" the evidentiary error "tainted the verdict." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008). A harmless error by the district court does not justify disturbing a jury's verdict. *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1439 (9th Cir. 1990).

The Court acknowledges reasonable minds might differ on various evidentiary rulings made throughout the trial, in particular testimony from Mark Smith regarding retaliation. Ultimately though, the Court believes its rulings were a proper exercise of its discretion. Notwithstanding, even if the Court did err regarding the evidentiary issues raised in Defendant's motion for a new trial, any such error was harmless. The Court's rulings did not substantially prejudice Defendant or otherwise "taint" the verdict. This case turned on Plaintiffs' credibility versus that of their co-workers and Defendant's management. As already noted, their differing recollection of the events leading up to the initiation of the lawsuit left the jury with a stark choice of who to believe. None of the Court's alleged errors prejudiced Defendant's ability to present witnesses to rebut Plaintiffs' testimony concerning what occurred at Plaintiffs' place of work during the relevant period. The jury found Plaintiffs' testimony more credible than that of the Defendant's witnesses and for that reason it found in Plaintiffs' favor.

**C.  Inconsistent Jury Verdict**

Defendant contends a new trial is warranted because the jury found in favor of Plaintiffs on their WLAD claims while finding for Defendant on their Title VII claims. (Dkt. No. 190 at 12–13.) Defendant claims the jury reached an inconsistent verdict because a claim for hostile work environment under WLAD and Title VII have substantially the same elements. (*Id*. at 13.)

While the WLAD, as applied to racial discrimination claims, "closely resembles Title VII," *Thompson v. North American Terrazzo Inc.*, Case No. C13–1007–RAJ, 2015 WL 926575

1  at *8 (W.D. Wash. Mar. 4, 2015), the WLAD directs that its provisions "shall be construed

2  liberally"; a stark difference from Title VII.  *See* Wash. Rev. Code § 49.60.020; *Martini v.*

3  *Boeing Co.*, 971 P.2d 45, 53 (Wash. 1999) (Noting that unlike WLAD, Title VII does not contain

4  a direction for liberal interpretation); *see also Antonius v. King County*, 103 P.3d 729, 735

5  (Wash. 2004) (declining to find federal authority persuasive where Title VII and WLAD are

6  different).  Moreover, the language of the elements for each claim is not identical.  Thus, the

7  WLAD and Title VII claims are not identical.

8         That there exists a difference between the WLAD and Title VII was acknowledged by

9  Defendant when the jury instructions were proposed and prepared.  Defendant accepted separate

10 jury instructions, containing separate elements, for each claim.  Defendant did not seek an

11 instruction instructing the jury that its ultimate verdict on the WLAD claim had to be the same as

12 its verdict on the Title VII claim, or vice versa.  If Defendant believed the claims were identical,

13 it offered no argument to that effect at the time the instructions were prepared and submitted to

14 the jury.  Defendant, therefore, understood there was a potential for the jury to find differently on

15 each claim.

16        The alleged inconsistency Defendant raises to support a new trial is an argument that has

17 been rejected.  In *Zhang*, a jury returned a mixed verdict by rejecting the plaintiff's hostile work

18 environment, retaliatory discharge, and state-law discrimination claims, but finding certain

19 defendants liable for federal-law discrimination claims.  339 F.3d at 1026.  In evaluating whether

20 to grant a new trial under Rule 59, *Zhang* noted that courts are "bound by those grounds that

21 have been historically recognized" and that there were not any Supreme Court or Ninth Circuit

22 decisions "grant[ing] a new trial due to inconsistencies between general verdicts[.]"  *Id*. at 1035.

23 In addition, "legally inconsistent verdicts 'may nonetheless stand on appeal even though

24

ORDER DENYING MOTION FOR NEW TRIAL - 11

inconsistent.'" *Id.*, quoting *International Longshoremen's Union v. Hawaiian Pineapple Co.*, 226 F.2d 875, 881 (9th Cir. 1955).

Moreover, "the potential for a legally irreconcilable verdict should be addressed through jury instructions properly proposed under Rule 51" and "instructional errors [under Rule 51] are waived if not raised in a timely fashion." *Id.* at 1037. To allow otherwise "would permit the sort of 'sandbagging' that the rules are designed to prevent, while undermining the ideal of judicial economy that the rules are meant to serve." *Id.*, quoting *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62 (2d Cir.), *cert. denied*, 537 U.S. 1019 (2002).

*Zhang* also provided a long list of decisions from other circuits upholding general verdicts that appeared inconsistent. *Id.* at 1036. Ultimately, *Zhang* held,

> In this case, there is no legal reason that the verdicts on the two discrimination claims would have had to be identical. Neither is predicated on the other, nor is exoneration from discrimination under state law an affirmative defense to discrimination under federal law. Instead, this is exactly the type of apparent inconsistency between general verdicts that has long been allowed to stand in this Circuit and others.

*Id.* at 1037.

As in *Zhang*, there is no legal reason that the verdicts on the Plaintiffs' state and federal claims had to be identical. Neither is predicated on the other, nor would exoneration from a hostile work environment under federal law act as an affirmative defense under state law, or vice versa. Even assuming an inconsistent verdict, the verdict in this matter is "exactly the type of apparent inconsistency between general verdicts that has long been allowed to stand in this Circuit and others." *Id.*

ORDER DENYING MOTION FOR NEW TRIAL - 12

## IV.   ORDER

Defendant's motion for a new trial (Dkt. No. 190) is DENIED.

Dated this 8th day of September, 2023.

David G. Estudillo
United States District Judge