UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ELIAS PEÑA, ISAIAH HUTSON, and RAY ALANIS,<br><br>　　　　　　　Plaintiffs,<br>　　v.<br>CLARK COUNTY,<br><br>　　　　　　　Defendant. | CASE NO. 3:21-cv-05411-DGE<br><br>ORDER ON MOTION FOR ATTORNEY FEES (DKT. NO. 181) |

Presently before the Court is Plaintiffs' motion for attorney fees. (Dkt. No. 181.) For the reasons discussed below, the motion is GRANTED in part and DENIED in part.

### I.　　FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Elias Peña, Isaiah Hutson, and Ray Alanis are Latino employees of the Roads Division of Clark County's Public Works Department. (Dkt. Nos. 47-3 at 4; 53-1 at 5; 53-2 at 5.)  In their Amended Complaint, Plaintiffs filed claims for denial of equal protection under 42 U.S.C. § 1983 and disparate treatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Washington Law Against Discrimination ("WLAD"). (Dkt. No. 19.) Plaintiffs

1   also filed hostile work environment claims under Title VII, 42 U.S.C. § 1981, and WLAD.  (*Id*.)

2   On April 28, 2023, the Court granted in part Defendant's motion for summary judgment,

3   dismissing Plaintiffs' claims for disparate treatment brought pursuant to Title VII and WLAD,

4   Plaintiffs' 42 U.S.C. § 1983 equal protection claims, and Plaintiffs' 42 U.S.C. § 1981 claim

5   against the County.  (Dkt. No. 90.)  The Court denied Defendant's motion for summary

6   judgment with respect to Plaintiffs' Title VII and WLAD hostile work environment claims.  (*Id*.)

7   Following trial, the jury returned a verdict in favor of Plaintiffs with respect to their

8   claims under WLAD.  (Dkt. Nos. 174, 175, 176.)  The jury returned a verdict in favor of

9   Defendant on each of Plaintiffs' Title VII claims.  (*Id*.)

## II.   LEGAL STANDARD

The lodestar method is "the default principle for fee calculation in Washington."  *See Brand v. Dep't of Labor & Indus*., 989 P.2d 1111, 1119 (Wash. 1999).  Washington law presumes a properly calculated lodestar figure represents reasonable compensation for counsel. *Henningsen v. Worldcom, Inc*., 9 P.3d 948, 959 (Wash. Ct. App. 2000).

The lodestar method multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir.1995).  After calculating this, courts then assess whether it is necessary to adjust the presumptively reasonable lodestar figure based on twelve factors.  *Id*. at 252 n. 4; *see Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir.1975) (describing the twelve factors)

### III.  DISCUSSION

**A.  Plaintiffs' Motion for Attorney Fees**

Plaintiffs seek $1,130,293.75[1] in attorney fees, $561,494.12 as a risk multiplier, and $185,998.88 in litigation costs.[2] (Dkt. No. 181 at 3.) Plaintiffs contend this case involved extensive discovery, numerous depositions, multiple pre-trial motions and a complex trial which took nearly a month to complete. (Dkt. No. 181 at 5–7.) Plaintiffs' attorneys contend their hourly rates were reasonable and that they worked a reasonable number of hours. (*Id*. at 7–11.)

**B.  Defendant's Response**

Defendant asks the Court to award Plaintiffs no more than $507,463.75 in fees and $112,213.77 in costs. (Dkt. No. 186 at 1.) Alternatively, Defendant asks the Court to reduce Plaintiffs' fees and costs by 45% and to deny Plaintiffs' request for a risk multiplier. (*Id*. at 1–2.) Defendant further asks the Court to find Plaintiffs' fees for attorneys and support staff were unreasonably high. (*Id*. at 9–11.)

**C.  Lodestar Analysis**

1.  <u>Reasonableness of Fees</u>

---

[1] Plaintiffs' counsel incurred $1,122,988.25 in fees prior to the jury's verdict and uses this figure when calculating their proposed multiplier. (Dkt. No. 181 at 13.) The Court will do the same in calculating counsel's fee.

[2] On July 19, 2023, the Court issued an order striking Plaintiffs' request for costs without prejudice and directing Plaintiffs to file a separate motion for costs pursuant to Local Civil Rule 54(d). (Dkt. No. 189.) Plaintiffs filed a separate motion for costs on July 27, 2023. (Dkt. No. 197), which the Clerk's Office granted in part on August 29, 2023. (Dkt. No. 219.) On August 8, 2023, the Court issued an order clarifying its previous order and directing Plaintiffs to file a standalone motion for non-taxable costs. (Dkt. No. 209.) Plaintiffs filed a motion for non-taxable costs on August 15, 2023. (Dkt. No. 212.) The Court will issue a separate order on this motion.

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 866, 895 n.11 (1984).

In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The court may also rely on its own knowledge and experience in determining what rates are reasonable. *See Salyer v. Hotels.com GP, LLC*, Case No. C13-1966-RSL, 2015 WL 3893079, at *2 (W.D. Wash. June 23, 2015) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

In support of their motion, Plaintiffs submitted declarations from attorneys Roger Townsend and Leticia Saucedo, both of whom were attorneys of record in this case. (Dkt. Nos. 182, 183.) Townsend has been licensed to practice law in Washington since 1995 and is a founding member of Breskin Johnson and Townsend PLLC ("BJT"), a Seattle-based employment law firm. (Dkt. No. 182 at 1.) Townsend's hourly rate is $555.00 per hour. (*Id*. at 2.) Townsend's partner, Dan Johnson, has practiced law in Washington since 1999 and is also a founding member of BJT. (*Id*.) Johnson participated in this case, and his hourly rate is $555.00 per hour. (*Id*.) Two BJT paralegals, Ann Iarossi and Jesica McClure, also worked on the case.

ORDER ON MOTION FOR ATTORNEY FEES (DKT. NO. 181) - 4

(*Id*.)  Each has over 20 years of experience as a legal assistant/paralegal, and BJT bills clients $180.00 per hour for their time.  (*Id*.)

Leticia Saucedo is National Senior Counsel for the Mexican American Legal Defense and Educational Fund ("MALDEF").  (Dkt. No. 183.)  Saucedo graduated from Harvard Law School in 1996, and currently serves as the Martin Luther King, Jr. Professor of Law at the University of California, Davis, where she teaches employment law, labor law, and torts.  (*Id*. at 2.)  She began her career as an academic in 2003, and previously served as a staff attorney for MALDEF.  (*Id*. at 2–3.)  Saucedo's hourly rate is $555.00 per hour.  (*Id*. at 6.)

Several other MALDEF attorneys also participated in this case.  Andres Holguin-Flores began practicing law in 2015.  (*Id*. at 4.)  He clerked for two federal judges and worked as a staff attorney for MALDEF from 2017 to 2023.  (*Id*. at 4–5.)  MALDEF billed $360.00 per hour for Holguin-Flores' work.  (*Id*. at 6.)  Luis Lozada graduated from law school in 2019, served as a clerk for two federal judges, and began working as a staff attorney for MALDEF in 2021.  (*Id*. at 5.)  MALDEF bill clients $310.00 per hour for Lozada's time.  (*Id*. at 6.)  Fernando Nunez also graduated from law school in 2019 and served as a Term Law Clerk and a Career Law Clerk for a United States Magistrate Judge before joining MALDEF as a staff attorney.  (*Id*. at 5–6.)  MALDEF also bills $310.00 per hour for Nunez's time.  (*Id*. at 6.)

Plaintiffs submitted a declaration from Thomas B. Vertetis, a managing partner at the firm of Pfau Cochran Vertetis Amala Law PLLC.  (Dkt. No. 184.)  Vertetis began practicing law in 1997, served as a judicial law clerk, and later worked as an assistant prosecutor in Middlesex County, New Jersey.  (*Id*. at 1–2.)  Vertetis began practicing law in Washington State in 2001 and worked for several firms before starting his own in 2009.  (*Id*. at 2.)  Vertetis' current practice primarily consists of representing plaintiffs in medical malpractice, civil rights, personal

injury, and elder abuse cases. (*Id*. at 3.) In his declaration, Vertetis asserts Townsend's rate of $555.00 per hour is within the range of customary and reasonable rates charged by plaintiff employment attorneys in the Seattle area with comparable levels of experience and expertise. (*Id*. at 4.) Vertetis cites cases from this district in which judges have approved similar rates for himself and attorneys of comparable experience. (*Id*. at 4–5.)

Plaintiffs also submitted a declaration from James W. Beck, a partner at the firm of Beck Chase Gilman PLLC. (Dkt. No. 185.) Following a clerkship, Beck began working for the firm of Gordon Thomas Honeywell in Tacoma, where he became a partner in 2007. (*Id*. at 1–2.) In 2021, he started Beck Chase Gilman PLLC with two of his colleagues. (*Id*. at 2.) Beck's practice focuses on plaintiffs' insurance coverage, wrongful death and catastrophic personal injury, and employment litigation. (*Id*.) Beck is familiar with hourly rates charged by Seattle-Tacoma area employment attorneys and is generally familiar with paralegal services and pricing. (*Id*. at 3–4.) Beck asserts the rates charged by BJT and MALDEF attorneys and paralegals are reasonable and within the customary rates charged in the local legal market by practitioners of similar experience and expertise. (*Id*. at 5.)

Defendant contends the rates requested by Plaintiffs' attorneys and support staff are unreasonably high. (Dkt. No. 186 at 9–11.) Defendant argues MALDEF attorneys have never tried a case in the Western District of Washington and notes Defendant's experienced trial attorneys charge far less than MALDEF's. (*Id*. at 11.)

The Court accepts the statements of attorneys Vertetis and Beck that the rates sought by BJT and MALDEF attorneys are in line with those charged by attorneys of comparable skill, experience and reputation in western Washington, and that the rates charged for the services of paralegals employed by BJT and MALDEF are also reasonable.

ORDER ON MOTION FOR ATTORNEY FEES (DKT. NO. 181) - 6

The Court also finds the rates requested are reasonable in light of rates approved by this Court when considering comparable Washington attorneys. *See e.g., Berg v. Bethel School District*, Case No. 3:18-cv 05345-BHS, Dkt. No. 199 at 4–6 (W.D. Wash. May 19, 2022) (considering rates for several western Washington attorneys and finding reasonable rates of between $350.00 per hour for junior associates and $600.00 per hour for senior partners); *Allstate Indemnity Co. v. Lindquist*, Case No. 2:20-cv-01508-JLR, Dkt. No. 91 at 7–8 (W.D. Wash. Sept. 16, 2021) (approving rates of between $475.00 and $700.00 per hour for attorneys and a $300.00 per hour rate for paralegals); *Thomas et al. v. Cannon, et al.*, Case No. 3:15-cv-05346-BJR, Dkt. No. 374 at (W.D. Wash. Mar. 28. 2018) (approving attorney fees of $600.00 per hour for a senior partner and $275.00 for attorneys with three years' experience; finding $150.00 per hour a reasonable rate for a paralegal with 16 years' experience).

2.  Reasonableness of Hours Worked

When submitting a motion for attorney fees, a prevailing party may submit records containing entries for hours that are "excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir.2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). A district court may exclude such hours from an attorney fees motion using one of two methods. The court may either: (1) conduct an "hour-by hour analysis of the fee request" and exclude unreasonable hours; or (2) "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (internal citations omitted).

The determination of fees "should not result in a second major litigation" and trial courts "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The essential goal in shifting fees "is to do rough justice, not to achieve auditing perfection." *Id*. Trial courts "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

Defendant contends Plaintiffs' motion includes fees for hours not reasonably expended on the case and fees that are the result of overstaffing, attorney turnover, and wasteful discovery efforts. (Dkt. No. 186 at 3–6.) Defendant asks the Court to exclude from Plaintiffs' fee vague or duplicative entries, non-contemporaneous bills, and those hours worked by attorney Andres Holguin-Flores, who withdrew from this case in April 2023. (*Id*. at 7–9.) Defendant asks the Court to limit Plaintiffs' fees to those attributable to Plaintiffs' successful WLAD claims. (*Id*. at 6–7.)

Where a plaintiff has obtained excellent results, his or her attorney should recover a full compensatory fee. *Hensley*, 461 U.S. at 435. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. *Id*. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. *Id*. On the other hand, if a plaintiff has achieved only partial or limited success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id*. at 436.

There is no precise rule or formula for making these determinations. *Id*. at 436–437. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. *Id*. However, in determining an appropriate

ORDER ON MOTION FOR ATTORNEY FEES (DKT. NO. 181) - 8

attorney's fee, the "result is what matters" and the most critical factor is "the degree of success obtained." *Id*. at 435–436.

Here, the jury returned a verdict in favor of Plaintiffs with respect to their claims under WLAD while finding for Defendant on each of Plaintiffs' Title VII claims. (Dkt. Nos. 174, 175, 176.) The jury awarded $200,000.00 in damages per Plaintiff, considerably less than the $800,000.00 requested.

Plaintiffs' attorneys fell short of complete success. Nevertheless, as discussed below, Plaintiffs' counsel took a risk in taking on this case, the outcome of which hinged in large part on whether the jury believed their clients over the numerous witnesses presented by Defendant. The fact that the jury ultimately found for Plaintiffs reflects a significant degree of success on the part of Plaintiffs' attorneys. Nevertheless, the Court finds it appropriate to reduce the requested fee by 10% to account for the failure to prevail on the Title VII claims and the reduced damage award from the jury. With respect to Defendant's other contentions, the Court reduces Plaintiffs' fee by an additional 2.5% to account for overstaffing and excess effort. *See e.g., Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1335 (C.D. Cal. 2015) ("There is a growing trend that District Court judges should award fees based on an overall global understanding and review of a case, rather than on a tedious review of voluminous time entries and hourly rates.").

Plaintiffs incurred $1,122,988.25 in fees prior to the jury's verdict. Reducing these fees by 12.5% results in a total fee of $982,614.72.

### D. Multiplier Analysis

Plaintiffs ask the Court to adjust the lodestar figure upward by 50% to account for the risk associated with taking on this case. (Dkt. No. 181 at 12–13.)

ORDER ON MOTION FOR ATTORNEY FEES (DKT. NO. 181) - 9

Under Washington law, adjustments to the lodestar are considered "under two broad categories: the contingent nature of success, and the quality of work performed." *Bowers v. Transamerica Title Ins. Co.*, 675 P.2d 193, 204 (Wash. 1983).  In adjusting the lodestar to account for the risk factor, the trial court must assess the likelihood of success at the outset of the litigation.  *Id.*

The two firms representing Plaintiffs took this case on a contingency fee basis.  In addition to the risks typically associated with taking a case on contingency, Plaintiffs' attorneys contend they took a higher-than-usual degree of risk in taking on this case because of the lack of documentary evidence, the absence of witnesses likely to substantiate Plaintiffs' claims, and the lack of any wage loss damages. (Dkt. No. 181 at 4–5.)  Defendant contends a contingency multiplier is inappropriate in this case because Plaintiffs' requested fees are already excessive and duplicative.  (Dkt. No. 186 at 11–12.)

As the Court has previously noted, the dispositive issue in this case was the credibility of the witnesses.  (*See* Dkt. No. 223.)  Because the outcome of this case depended on whether the jury believed Plaintiffs over the numerous witnesses presented by Defendant, the likelihood of success at the outset was highly uncertain.  "The contingency adjustment is based on the notion that attorneys generally will not take high risk contingency cases, for which they risk no recovery at all for their services, unless they can receive a premium for taking that risk." *Chuong Van Pham v. City of Seattle, Seattle City Light*, 151 P.3d 976, 983 (Wash. 2007).  The possibility of attorneys investing significant time and effort in a civil rights-based contingency fee case, only to recover nothing, is far from theoretical. *See e.g., Nelson v. Thurston County et al.*, Case No. 3:18-cv-05184-DGE at Dkt. No. 379.

1    Having reviewed precedent cited by Plaintiffs, the Court finds a multiplier of 33% is an appropriate adjustment for the risk incurred by counsel in taking on this case. (*See* Dkt. No. 182.) The Court finds this figure is adequate to account for the risk taken by Plaintiffs' counsel, provides an incentive for other attorneys to take on civil rights cases, and avoids a windfall. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Allison v. Housing Auth. of City of Seattle*, 821 P.2d 34, 37 (Wash. 1991).

Multiplying the adjusted lodestar figure of $982,614.72 by 0.33 results in a contingency multiplier of $324,262.86. Adding the two figures together results in a total fee award of **$1,306,877.58.**

### IV.   ORDER

Plaintiffs' motion for attorney fees (Dkt. No. 181) is GRANTED in part and DENIED in part. Plaintiffs' total attorney fee award shall be **$1,306,877.58.**

Dated this 1st day of December, 2023.

David G. Estudillo
United States District Judge